DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTIAN RODRIGUEZ VALLE,<br><br>    Defendant. | NO. 19-CR-0381-10 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. Charles R. Breyer<br>Sentencing Date: May 12, 2020<br>Time: 1:30 pm |

## I. INTRODUCTION

Throughout 2019, Christian Rodriguez Valle "worked" as a street-level drug dealer within the drug trafficking organization (DTO) run by Andy Reanos-Moreno. Rodriguez Valle bought drugs from Reanos-Moreno, and then, along with other members of the DTO traveled to the Tenderloin neighborhood of San Francisco where he resold those drugs. On several occasions, Rodriguez Valle called Reanos-Moreno to order an additional resupply of heroin, cocaine, and cocaine base.

Despite being arrested in April 2019 by the San Francisco Police Department for drug dealing, Rodriguez Valle remained undeterred. When federal agents searched Rodriguez Valle's home in August 2019, at the time of his arrest in this case, they seized distribution quantities of fentanyl, cocaine, cocaine base, and heroin. Further, Rodriguez Valle's disregard for the law precedes his drug trafficking in the Bay Area. He was previously deported from the United States in 2016, following multiple arrests in Utah for drug trafficking.

During the change of plea hearing, defense counsel argued in favor of the imposition of an immediate sentence of time served. Counsel argued that the drugs seized at Rodriguez Valle's home in August 2019 were attributable to the defendant as well as his roommates. Defendant's roommates were prosecuted in state court and received lower sentences than the amount of time Rodriguez Valle has served in federal custody. But what distinguishes Rodriguez Valle's case is the evidence of his drug dealing with the Reanos-Moreno DTO throughout 2019. The August 2019 seizure was not an isolated occasion for Rodriguez Valle. Rather, the evidence establishes that it was simply another day in his continual pattern of drug dealing.

In order to promote both specific and general deterrence, and to protect the community, the Court should impose a 30-month sentence (the low-end of the Guidelines), followed by three years of supervised release, and a $100 special assessment.

## II.     SENTENCING GUIDELINES CALCULATIONS

As set forth in the parties' written plea agreement, the parties agree to the following Sentencing Guidelines calculation:

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(9):<br>(At least 80 KG but less than 100 KG of Converted Drug Weight) | 22 |
| b. | Acceptance of Responsibility: | - 3 |
| c. | Adjusted Offense Level: | 19 |

The parties agreed upon the base level offense as an estimation of the drug quantity reasonably attributable to Rodriguez Valle within the conspiracy. The combined Converted Drug Weight (CDW) of the narcotics seized from Rodriguez Valle's home in August 2019 is 99 kilograms CDW.

1  Additionally, the government reviewed each of Rodriguez Valle's intercepted phone calls with Reanos-
2  Moreno.  (*See* Declaration of Sailaja M. Paidipaty ("Paidipaty Decl.") at Exhibit A, Line Sheets.)
3  During many of these calls, the two discussed quantities of drugs using coded language.  For example,
4  agents learned during the investigation that a reference to "one" of "black" indicated an order for one
5  unit of heroin ("black").  Even assuming the smallest unit of measure typically used by drug suppliers
6  for sale to a street-level dealer – one-eighth of an ounce – the combined amount ordered by Rodriguez
7  Valle during one month of intercepted phone calls falls within the agreed upon base offense level.
8  Therefore, the evidence amply supports the application of the base offense level to Rodriguez Valle.
9  The Court should reject an assertion that the base offense level reflects a drug quantity attributable to
10 Rodriguez Valle and others (such as his roommates).

11  The parties agree that Rodriguez Valle falls in Criminal History Category I.  The Guidelines
12 range for imprisonment associated with adjusted offense level 19 and Criminal History Category I is 30
13 to 37 months.

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

15  The Court should impose a sentence sufficient, but not greater than necessary, to reflect the
16 purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520
17 F.3d 984, 991 (9th Cir. 2008).  The Court should begin by calculating the correct sentencing range under
18 the Sentencing Guidelines.  *Id.*  The Guidelines are "the 'starting point and the initial benchmark,'"
19 *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S.
20 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process."
21 *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).  After determining the appropriate Guidelines
22 calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the
23 factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Here, the most important considerations
24 are the nature and circumstances of the offense, the need to afford adequate deterrence, and the
25 protection of the public.  18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C).

26  As the Court knows based on prior sentencing hearings in this case, the charges here stem from a
27 federal wiretap investigation described in detail in the Criminal Complaint filed on August 31, 2019.

(*See* Dkt. 1, Compl. (originally filed under 3:19-71162 TSH).) As described in the Complaint, the investigation uncovered an organized drug network where Reanos-Moreno housed street-level dealers in houses and apartments in the East Bay. (*See* Dkt. 1, Compl. ¶¶ 17-26.) On a near daily basis, the street-level dealers placed orders for drugs with Reanos-Moreno who then either dropped them off himself or sent a runner to make the drop-off. (*Id.*) Rodriguez Valle and the other street-level dealers then traveled to the Tenderloin to resell the drugs. (*Id.*)

For example, on February 2, 2019, at approximately 1:58 p.m., Rodriguez-Valle called Reanos-Moreno and discussed an order of "rock." (Paidipaty Decl., Exhibit A, Line Sheets at Call 947.) "Rock" is a term often used by drug traffickers to reference cocaine base (crack). Towards the end of that conversation, Reanos-Moreno said he would "go over." (*Id.*) At approximately 2:45 p.m. on the same day, Reanos-Moreno told Rodriguez-Valle over the phone that he was "stopped at the corner." (*Id.* at Call 949.) Rodriguez-Valle told Reanos-Moreno to "go in because Gordo was going to buy some." (*Id.*) Based on the context of the call, Rodriguez Valle seemed to indicate that another individual also wanted to buy drugs from Reanos Moreno. Three minutes after this call, physical location data associated with Reanos-Moreno's phone indicated that the phone was near Rodriguez-Valle's home on Havenscourt Boulevard.

This pattern repeated throughout last year. And it repeated despite Rodriguez Valle being arrested by state officers. In April 2019, Rodriguez Valle was arrested after being seen engaging in several hand-to-hand drug sales on Golden Gate Avenue in the Tenderloin. (Dkt. 1, Compl. ¶¶ 168-171.) During the August 2019 search of Rodriguez Valle's home, agents found state court paperwork ordering Rodriguez Valle to stay away from the area near 350 Golden Gate Avenue. (*See* Paidipaty Decl., Exhibit B.) Agents also found what appeared to be a jail identification bracelet with Rodriguez Valle's name and picture. (Paidipaty Decl, Exhibit C.) Despite this prior arrest, Rodriguez Valle continued dealing drugs. Agents seized 7.13 grams of fentanyl, 7.27 grams of cocaine, and 13.6 grams of cocaine base (crack), and 31.3 grams of heroin from the home.

Further, before dealing drugs in the Bay Area, Rodriguez Valle was arrested, in 2014, for drug dealing in Utah. In 2016, he was deported to Honduras. At some point afterwards, he returned to the

United States and selected a new area where he believed he could get away with drug trafficking. Neither prior state arrests, nor a prior federal deportation deterred Rodriguez Valle from further criminal conduct. Both to send a message to this defendant as well as other street-level dealers who prey on the community with no fear of consequences, this Court must sentence Rodriguez Valle to a meaningful custodial term.

### IV.   CONCLUSION

The government recommends that the Court sentence Rodriguez Valle to 30 months in prison, 3 years of supervised release, and a $100 special assessment.

DATED: May 5, 2020                                          Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

         /s/
SAILAJA M. PAIDIPATY
Assistant United States Attorney